834 So.2d 319 (2003)
Rebecca E. NIEMANN, f/k/a Rebecca Wert Anderson, Appellant,
v.
Harry Kemp ANDERSON, III, Appellee.
No. 5D02-576.
District Court of Appeal of Florida, Fifth District.
January 3, 2003.
J. Michael Malone, Orlando, for Appellant.
*320 Norman D. Levin and Matthew B. Capstraw of Norman D. Levin, P.A., Longwood, for Appellee.
PALMER, J.
Rebecca Niemann (mother) appeals the final order entered by the trial court modifying Harry Kemp Anderson's (father) child support obligation downward from $1,413.00 to $163.51 per month. Concluding that the trial court failed to set forth a proper basis for the reduced child support obligation, we reverse.
The marriage of the parties was dissolved in 1997. In entering the dissolution judgment, the trial court incorporated the terms of the parties' marital settlement agreement which, among other things, provided the father with approximately 140 overnight contacts with his children each year and required him to pay child support in the amount of $1,413.00 per month.
In January of 2001, the father filed a petition to modify his child support obligation. To support his request, the father cited to changes in the parties' employment and income, changes in the parties' child care needs, and substantive changes in the Florida statutory law, that being the enactment of section 63.10(11)(b).[1]
The trial court conducted an evidentiary hearing in this matter. During the hearing, *321 the father contended that modification was warranted because he had overnight visitations which exceeded the 40 per cent referenced in the statute (greater than 146 days), but at the conclusion of the evidentiary hearing the trial court found that the father's overnight visits totaled 140 nights per year. The mother meanwhile stipulated that there had been a substantial change of circumstances in that her income had increased, the children's day care expenses had decreased, and the children's healthcare expenses were now absorbed by the mother's employer. The trial court agreed that modification was warranted and directed that counsel calculate the child support guidelines amount based upon the parties' current income. However, the court further directed that the father's contact of 140 days per year be taken into account in recalculating the amount of his child support obligation. The trial court thereafter entered a modification order reducing the father's monthly support obligation from $1,413.00 per month to $163.51 per month. The court did not specifically set forth whether, in reaching this amount, the court was applying section 61.30(11)(b) (even though the total number of overnight contacts was less than 146 days per year), or whether the court was exercising its discretion under section 61.30(1)(a) to provide a downward departure from the guidelines based on the extent of overnight contacts less than 146 days. The mother appeals this ruling.
The decision to modify a parent's child support obligation is largely within the sound discretion of the trial court upon consideration of the evidence. Freeman v. Freeman, 615 So.2d 225 (Fla. 5th DCA 1993). As a result, the party who challenges the correctness of a modification order has the burden of demonstrating, on the record, an abuse of discretion. Chereskin v. Chereskin, 790 So.2d 496 (Fla. 5th DCA 2001).
The mother first contends that since the only substantial change of circumstances which occurred in this case involved the parties' financial circumstances, not the custody arrangements between the parties, the trial court could not properly adjust the support based upon the father's contact schedule. We disagree. The mother has cited no law to support the proposition that modification by the trial court must be limited to the specific factors proven to have substantially changed and such is not the law. Rather, if the moving party meets its burden of establishing that a substantial change of circumstance has occurred, the trial court has the right to modify the child support obligation and, in doing so, can properly consider all of the statutory factors regarding child support.[2]
The mother also argues that the trial court erred in calculating the amount of the father's modified child support obligation in that the court improperly applied section 61.30(11)(b) of the Florida Statutes to the facts of this case. The father concedes that section 61.30(11)(b) is not applicable, since the court failed to find that overnight visits exceed 146 nights per year, but he contends that the trial court properly reduced his child support obligation pursuant to section 61.30(1)(a).
*322 Since all parties are in agreement that section 61.30(11)(b) is not applicable in this case, the issue before this court is simply whether the trial court's order can be sustained as a valid downward departure under section 61.30(1)(a). We conclude that it cannot.
Unfortunately, the order entered by the trial court does not indicate the method which was used by the court to calculate the new amount of the father's child support obligation. The trial court's order does not set forth what the guidelines amount of support would be based upon the parties' current financial conditions, the amount of the downward departure, and the reasons for the downward departure. Accordingly, the trial court's order must be vacated and this cause remanded for entry of a proper support order which comports with the terms of section 61.30 of the Florida Statutes. On remand, the trial court should set forth in its order the guideline support amount, the amount of downward deviation from the guideline amount, and the reasons for that deviation, so that proper review by this court can be made. See Gomez v. Gomez, 727 So.2d 1092 (Fla. 1st DCA 1999)(holding that the absence of written findings explaining why ordering payment of child support guidelines would be unjust or inappropriate requires reversal of order dramatically deviating from guidelines).
REVERSED and REMANDED.
THOMPSON, C.J., and PETERSON, J., concur.
NOTES
[1] 61.30 Child support guidelines; network child support

* * *
(b) Whenever a particular shared parental arrangement provides that each child spend a substantial amount of time with each parent, the court shall adjust any award of child support, as follows:
1. In accordance with subsections (9) and (10), calculate the amount of support obligation apportioned to the noncustodial parent without including day care and health insurance costs in the calculation and multiply the amount by 1.5.
2. In accordance with subsections (9) and (10), calculate the amount of support obligation apportioned to the custodial parent without including day care and health insurance costs in the calculation and multiply the amount by 1.5.
3. Calculate the percentage of overnight stays the child spends with each parent.
4. Multiply the noncustodial parent's support obligation as calculated in subparagraph 1. by the percentage of the custodial parent's overnight stays with the child as calculated in subparagraph 3.
5. Multiply the custodial parent's support obligation as calculated in subparagraph 2. by the percentage of the noncustodial parent's overnight stays with the child as calculated in subparagraph 3.
6. The difference between the amounts calculated in subparagraphs 4. and 5. shall be the monetary transfer necessary between the custodial and noncustodial parents for the care of the child, subject to an adjustment for day care and health insurance expenses.
7. Pursuant to subsections (7) and (8), calculate the net amounts owed by the custodial and noncustodial parents for the expenses incurred for day care and health insurance coverage for the child. Day care shall be calculated without regard to the 25-percent reduction applied by subsection (7).
8. Adjust the support obligation owed by the custodial or noncustodial parent pursuant to subparagraph 6. by crediting or debiting the amount calculated in subparagraph 7. This amount represents the child support which must be exchanged between the custodial and noncustodial parents.
9. The court may deviate from the child support amount calculated pursuant to subparagraph 8. based upon the considerations set forth in paragraph (a), as well as the custodial parent's low income and ability to maintain the basic necessities of the home for the child, the likelihood that the noncustodial parent will actually exercise the visitation granted by the court, and whether all of the children are exercising the same shared parental arrangement.
10. For purposes of adjusting any award of child support under this paragraph, "substantial amount of time" means that the noncustodial parent exercises visitation at least 40 percent of the overnights of the year.
[2] A parent, for example, could very well decide not to seek a reduction in support obligation based upon a significant contact schedule when income is at a level where he or she can adequately provide a guideline payment. However, if a substantial change of circumstance occurs as a result of a significant reduction in income, nothing in the law prevents that parent from then asking the trial court to apply all relevant statutory factors, including contact schedule, in setting a new child support obligation.